# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BANK OF AMERICA, N.A.,

    Plaintiff,

v.

TRINITY LIGHTING, INC., d/b/a
TRINITY LIGHTING,

    Defendant.

No. 10 C 2250
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is a collection action. Bank of America purchased all rights and interests in payments owing by Defendant to Berman Industries and now seeks to collect on the debt. Defendant now moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively to transfer venue. For the following reasons, Defendant's motion is denied.

## I. STATEMENT OF FACTS

Berman Industries, Inc. ("Berman"), True Home, Inc., and Casa Creations, Inc. (collectively "Berman Entities") manufactured, sold and delivered lighting fixtures and related products. Defendant has an outstanding balance owed to Berman. Bank of America purchased all rights and interests in payments owing by Defendant to Berman and now seeks to collect $276,129.93 plus interest for products Defendant ordered but failed to pay for.

The Berman Entities' products were primarily manufactured on a custom basis in an offshore factory. Berman invoiced Defendant directly. The Berman Entities and Bank of America were parties to an Amended and Restated Loan and Security Agreement. Berman

Entities defaulted under the Loan Documents, and on April 7, 2009, it entered into a Trust Agreement and Assignment for the Benefit of Creditors. On October 30, 2009, a public sale of Berman Industries' personal property was conducted and Bank of America acquired all rights, title and interest in the Accounts Receivable. As a result, the Unpaid Amount owing from Defendant to Berman is now owing to Bank of America.

**II. DISCUSSION**

Federal Rule of Civil Procedure 12(b)(2) allows non-resident defendants to challenge the Court's assertion of jurisdiction over them. Fed.R.Civ.P. 12(b)(2). Under Rule 12(b)(2) the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A .,* 338 F.3d 773, 782 (7th Cir.2003). In determining whether to exercise personal jurisdiction, a court may examine affidavits and other evidentiary materials submitted by the parties. *Id.* at 782-83.

Defendant argues that the court's exercise of specific jurisdiction is improper. A federal court sitting in diversity only has personal jurisdiction to the extent that jurisdiction exists under state law. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Illinois statute permits the exercise of jurisdiction on any basis permitted by the United States Constitution. 735 Il. Comp. Stat. 5/2-209(c). Illinois courts look to the Due Process clause of the Fourteenth Amendment to determine personal jurisdiction over a no-resident defendant.

Pursuant to the Fourteenth Amendment, a state may only exercise jurisdiction over a defendant if he has certain minimum contacts with a forum state. *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). To invoke personal jurisdiction, Plaintiff must show that Defendant "purposefully availed itself of the privilege of conducting

2

activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. Defendant's contacts must be such that it should "reasonably anticipate being haled into court there." *Id*. Under the Illinois Constitution, a court may exercise personal jurisdiction "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois*." Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill.1990).

To satisfy federal due process requirements, Trinity must have sufficient "minimum contacts" with Illinois such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts consider three criteria in determining whether exercising jurisdiction over a non-resident comports with federal due process standards: (1) whether the non-resident defendant has minimum contacts within the forum state such that he has fair warning that he may be required to defend himself there; (2) whether the action arises out of the defendant's contacts with the forum state; and (3) whether it is reasonable to require the defendant to litigate in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-77 (1985). When determining minimum contacts, courts consider prior negotiations, contemplated future consequences, as well as the parties' actual dealings. *Citadel*, 536 F.3d at 762.

Defendant denies that it purposefully availed itself of the benefits and protections of Illinois law. Though it admits that it had many contacts with Plaintiff, it states that its only contact with Plaintiff's Chicago office was in regard to payment. All other contacts with Plaintiff were directed at Plaintiff's Mississippi office or China facility.

3

Trinity is an Arkansas corporation with its principal place of business in Jonesboro, Arkansas. Trinity specializes in designing, manufacturing and marketing light products for the hospitality and healthcare industries. Many of Trinity's products are made in China and shipped to Arkansas for assembly and finishing. Products manufactured in China were purchased through Berman. Berman was an Illinois corporation that did business with Trinity for more than fifteen years. Trinity states that most of its contacts with Berman took place through Berman's Olive Branch, Mississippi office or China office. Trinity would send purchase orders to Berman's Mississippi office, and the Mississippi office would then facilitate the transaction. Goods were not routed through Berman's Illinois facilities. Trinity did, however, send final payment to Berman's Chicago office.

Contrary to Defendant's assertions, Plaintiff argues that substantial portions of the ongoing business between Trinity and Berman took place in Illinois. First, the initial relationship between the two entities was established in the early 1990's in Chicago. At that time, Berman's only office was located in Chicago. At a meeting in Chicago, Trinity's owner met with Berman's senior management. Plaintiff argues that credit was extended from the Chicago office, that purchase orders were received and invoiced through Berman's Chicago office, and all payments by Trinity were remitted to Berman's Chicago office. It is true that Trinity's purchase orders reflect Berman's Chicago office, although those orders were faxed directly to Mississippi. Berman's Olive Branch, Mississippi office was opened in 1995. Purchase orders were sent to the email addresses orders@bermanind.com and sli@bermanind.com. Berman maintains that the main operations of the company, such as directing the release of products to Trinity and

4

answering customer service questions, and processing the payment of invoices, were carried out through the Chicago office.

While Defendant admits that it did visit Berman's Chicago office over seventeen years ago, it states that on a day to day basis, its primary contact was with Berman's Memphis-based account manager, Andy Estes. Over the past sixteen years, Andy Estes visited Trinity in its Arkansas location approximately once a week. All negotiations regarding credit and potential charge backs following shipment of product were handled directly by Andy Estes.

Here, the President of Trinity traveled to Chicago many years ago to initiate a business relationship. Following the opening of the Mississippi office, Trinity had substantial dealings outside of Chicago; however, contact with Illinois continued, at a minimum to the extent that Trinity paid its invoices. Though Trinity relies heavily on the fact that it met with a representative from Memphis regularly and sent its purchase orders to Mississippi, it overlooks the fact that it initiated its business relationship in Illinois and regularly remitted payment to Illinois.

Illinois courts distinguish between "passive purchasers," who simply place orders from a catalog, and "active purchasers," who negotiate terms or require custom-made products. *See G.M. Signs, Inc. v. Kirn Signs, Inc.*, 596 N.E.2d 212, 215 (Ill. App. Ct. 1992). "Even where the bulk of negotiations took place outside of Illinois, Illinois courts have nonetheless found the exercise of personal jurisdiction proper where a commercial buyer deliberately reaches out beyond its home state to avail itself of the benefits with commercial ties with an Illinois corporation." *Bodine Elec. Co. v. Viking Access Sys., LLC*, No. 09 C 3055, 2009 WL 5173490 at * 3(N.D.Ill. Dec. 17, 2009) (*citing D.S. America (East) Inc. v. Elmendorf Grafica, Inc.*, 654

N.E.2d 472 (Ill. App. Ct. 1995)). In *Bodine*, this court found jurisdiction over a defendant engaged in an ongoing relationship with an Illinois corporation, notwithstanding purchase orders submitted though independent sales agents in California. The defendant in *Bodine* knew that the plaintiff was an Illinois corporation, orders were processed through the Illinois office, and invoices were sent to defendant by plaintiff's Illinois office. *Id.* at *2-4. I likewise find that Trinity availed itself of an Illinois corporation and is subject to this court's jurisdiction.

Trinity relies on *HC Duke & Sons, Inc. v. MIM Design Grp.*, No 07 C 4035, 2009 WL 294397 (C.D.Ill. Feb. 6, 2009), for the proposition that sending payment to Illinois does not constitute sufficient minimum contacts with Illinois to justify jurisdiction. *HC Duke & Sons* is distinguishable from the case at hand, however, because in *HC Duke & Sons*, the defendants were unaware that they were dealing with an Illinois company or that their products were being shipped from Illinois. Here, Defendant was well aware that Berman was an Illinois corporation, and Defendant's own purchase orders reflect Berman's address in Chicago, Illinois. Furthermore, this litigation arose out of a failure to pay invoices sent from the Chicago office. Accordingly, I find that Defendant's contacts with Illinois were sufficient to support this court's exercise of jurisdiction. Likewise, I find that this action arose out of Defendant's contacts with Illinois.

Next, I must consider whether it is reasonable to require Defendant to litigate in this state. Among the factors to consider when evaluating the burden on a defendant are the interests in the forum state, a plaintiff's interest in obtaining relief and the burden on the defendant. *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F.Supp. 2d 694, 700-01 (N.D. Ill. 2008). Though Defendant argues that it would face a significant burden, it only supports this argument

by stating that its an Arkansas corporation with its only place of business in Jonesboro, Arkansas. Trinity further argues that Bank of America is a North Carolina corporation and that Illinois' interest in adjudicating this matter abated with the transfer of Berman's accounts receivables to Bank of America. Trinity's argument is unavailing, particularly when considering that many of the events that gave rise to this action occurred in Illinois and key witnesses are located within this District. Accordingly, Defendant's motion to dismiss is denied.

Having found that jurisdiction is proper, I now address Trinity's motion to transfer to the Eastern District of Arkansas. 28 U.S.C. 1401(a) provides for the transfer of any civil action for the convenience of the parties and witnesses. On a motion to transfer venue, the burden is on the moving party to establish that "the transferee forum is clearly more convenient" than the transferor forum. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). When considering a motion to change venue, a court must consider: (1) whether venue is proper in the transferor district; (2) whether venue and jurisdiction are proper in the transferee district; (3) if the transferee district is more convenient for both parties and witnesses; and (4) if the transfer would serve the interest of justice. *Jaramillo v. Dine Equity, Inc*., 664 F.Supp.2d 908, 913 (N.D. Ill. 2009).

I have already determined that jurisdiction is proper in this district, and the parties do not dispute that jurisdiction is proper in the Eastern District of Arkansas given that Trinity is an Arkansas based company with its principal place of business in Jonesboro, Arkansas. Therefore, I will consider whether Arkansas is a more convenient forum.

In evaluating the convenience of a forum, a court considers (1) the plaintiff's choice of forum; (2) the site of material events; (3) ease of access to sources of proof; (4) the convenience

7

of the parties; and (5) the convenience of witnesses. *Gueorguiev v. Max Rave, LLC*, 526 F.Supp.2d 853, 857 (N.D. Ill 2007); *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D.Ill.2000).

Plaintiff's choice of forum is afforded much deference, particularly when it is the plaintiff's home forum. *Gueorguiev*, 526 F.Supp.2d at 857. Less deference is given, however, when another forum has a stronger relationship to the dispute. *Id*. Here, Plaintiff selected the Northern District of Illinois, where Berman was headquartered. Further, though Bank of America is a North Carolina corporation, its Chicago office (as successor to LaSalle Bank) made the loans that allowed Berman to extend credit to Trinity. Turning to the site of events giving rise to the action, though purchase orders were made in Arkansas and products were delivered to Arkansas, payments and invoicing occurred in Illinois. These factors do not weigh in favor of transfer.

Considering the ease of access to proof, and the convenience of the witnesses, there is a dispute of fact between the parties. Bank of America states that most, if not all, of the relevant non-party witnesses are located in the Northern District of Illinois, where Trinity argues that only one material witness would be found in Illinois. Furthermore, Trinity states that many witnesses are located in the Eastern District of Arkansas. It appears that regardless of the choice of forum, non-party witnesses will be subject to travel and inconvenience. This factor again does not weigh in favor of transfer.

Addressing the convenience of the parties, Trinity states that it is a small corporation and that travel to Illinois will present a significant burden and inconvenience. In contrast, it argues that Bank of America is a large, international financial institution with locations all over the

United States. While it might be true that litigating in Illinois would be inconvenient for Defendant, on balance, the private interest factors do not weight in favor of transferring this case to the Eastern District of Arkansas. Likewise, interest of justice factors do not support the conclusion that venue change is proper.

The "interests of justice" inquiry under 1404(a) focuses on the efficient and fair administration of the courts. *Coffey*, 796 F.2d at 220. Courts must consider the relative speed at which a case will proceed to trial, a court's familiarity with the applicable law, and the desirability of resolving controversies in the home forum. *Heller Fin'l v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

Trinity argues that statistics support a transfer because Federal Court Management Statistics show that in 2009 cases filed in the Eastern District of Arkansas proceeded to trial in 22 months, whereas in the Northern District of Illinois, cases proceeded to trial in 27.8 months. Bank of America, however, notes that the median time from filing to disposition before pretrial is 5.9 months in the Northern District of Illinois, compared to 8 months in the Eastern District of Arkansas. Moreover, Bank of America argues that Illinois contract law will govern the dispute, as well as the impact of the Assignment under Illinois law through which the Bank acquired its right to collect. These factors weigh against transferring venue. Finally, though Trinity argues that Arkansas' interest in resolving this conflict is greater than Illinois' because of Trinity's status as an Arkansas corporation, I find that Illinois, too has an interest in resolving this dispute as Berman was an Illinois corporation, although no longer in business.

Accordingly, I do not find that Trinity has met its burden of showing that the Eastern District of Arkansas is a more convenient forum. Defendants' motion to transfer is denied.

9

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or transfer venue is denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: October 20, 2010