UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| Plaintiff/Counter-Defendant, | ) | 10 C 2250 |
| vs. | ) | Judge Feinerman |
| TRINITY LIGHTING, INC. d/b/a TRINITY LIGHTING, | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bank of America, N.A. brought this action against Defendant Trinity Lighting, Inc., seeking to collect sums that Trinity allegedly owes on accounts receivable assigned to the Bank by non-party Berman Industries, Inc. Trinity answered and counterclaimed; the counterclaim seeks to set-off any amounts that Trinity owes the Bank by the amounts that Berman allegedly owes Trinity. The Bank has moved to dismiss the counterclaim under Rule 12(b)(6). The motion is denied.

The facts alleged in Trinity's counterclaim, and the undenied facts alleged in the Bank's complaint, are assumed true on the Bank's motion to dismiss the counterclaim. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Berman sold lighting products to Trinity pursuant to purchase orders placed by Trinity. The Bank's complaint alleges, though Trinity denies, that $276,129.93 of Berman's invoices remain unpaid. In April 2009, after defaulting on a loan from the Bank, Berman entered into a Trust Agreement and Assignment for the Benefit of Creditors to commence an assignment for the benefit of creditors under Illinois law. In October 2009, the Bank purchased at a public sale all rights, title, and

interest in the $276,129.93 of accounts receivable allegedly owed by Trinity. The Bank demanded payment of those amounts; when Trinity did not comply, the Bank filed this suit.

The cessation of Berman's business activities in April 2009 left Trinity holding the bag for a variety of costs that Berman otherwise would have paid, including $73,080 in freight and custom charges, $26,727 in container storage fees, and $104,584 in costs arising from damaged and defective products. In addition, Berman did not return $86,325 worth of tooling owned by Trinity. Those amounts, which are not alleged to involve the purchase orders and accounts receivable underlying the Bank's claims against Trinity, are the subject of Trinity's counterclaim. Citing 810 ILCS 5/9-404, which codifies § 9-404 of the Uniform Commercial Code ("UCC"), the counterclaim's key paragraphs allege that the Bank is Berman's assignee with respect to the accounts receivable, that the amounts Berman owes Trinity accrued before Trinity received notification of the assignment, and therefore that the amounts Berman owes Trinity should be credited against any amounts Trinity owes on the accounts receivable. Doc. 40 at ¶¶ 91-93.

The Bank moved to dismiss the counterclaim. The court granted the motion, in part with prejudice and in part without prejudice. 2011 WL 589679 (N.D. Ill. Feb. 10, 2011) (Zagel, J.). Trinity moved for reconsideration. While the reconsideration motion was pending, the assigned judge recused himself and vacated the order dismissing the counterclaim. Doc. 61. The parties then stipulated that the undersigned judge, to whose calendar this case was reassigned, would consider the Bank's motion to dismiss the counterclaim anew based on the briefs submitted on that motion and on Trinity's reconsideration motion. Doc. 66.

The Bank argues that Trinity's counterclaim fails as a matter of law because it rests on contracts different from the purchase orders underlying the accounts receivable on which the

Bank has sued. The Bank's premise is that an account debtor's set-off counterclaim against an assignee must arise from the contracts underlying the assignee's claim against the account debtor. That premise is patently incorrect.

Section 9-404 of the UCC provides in relevant part:

> § 9-404. Rights acquired by assignee; claims and defenses against assignee.
>
> (a) Assignee's rights subject to terms, claims, and defenses; exceptions. Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), *the rights of an assignee are subject to*:
>
> > (1) all terms of the agreement between the account debtor and assignor and *any defense or claim in recoupment arising from the transaction that gave rise to the contract*; and
> >
> > (2) *any other defense or claim of the account debtor against the assignor* which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.
>
> (b) Account debtor's claim reduces amount owed to assignee. Subject to [immaterial exceptions], the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes.

810 ILCS 5/9-404(a)-(b) (emphasis added). The provision is pellucid. When the assignee (here, the Bank) of an account creditor/assignor (here, Berman) brings suit to collect accounts receivable owed by the account creditor's account debtor (here, Trinity), the account debtor may assert two types of claims and defenses. The first is "any defense or claim in recoupment arising from the transaction that gave rise to the contract" between the account debtor and the account creditor/assignor. *Id*. 5/9-404(a)(1). The second is "*any other* defense or claim of the account debtor against the assignor," so long as the defense or claim accrued before the assignee or account creditor/assignor notifies the account debtor of the assignment. *Id*. 5/9-404(a)(2). The term "*any other* defense or claim" in subsection (a)(2) can mean only one thing: any defense or

-3-

claim not "arising from the transaction that gave rise to the contract" underlying the assignee's suit against the account debtor. Otherwise, subsection (a)(2) would be superfluous, contrary to cardinal principles of statutory interpretation. *See In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996).

It follows that an account debtor may press a counterclaim against an assignee regardless of whether it rests on the contract underlying the assignee's claim against the account debtor, though a counterclaim resting on a different contract must have accrued before the account debtor received notice of the assignment. The official comments to the 2001 revision of Article 9 make this clear: "Under subsection (a)(1), if the account debtor's defenses on an assigned claim arise from the transaction that gave rise to the contract with the assignor, it makes no difference whether the defense or claim accrues before or after the account debtor is notified of the assignment. Under subsection (a)(2), the assignee takes subject to other defenses or claims only if they accrue before the account debtor has been notified of the assignment." UCC § 9-404, Official Comment 2. To the court's knowledge, the only cases to have directly confronted the issue reached the same conclusion, although they were interpreting the former UCC § 9-318(1), the predecessor of the current § 9-404. *See PHD, Inc. v. Coast Bus. Credit*, 147 F. Supp. 2d 809, 814-17 (N.D. Ohio 2001); *BarclaysAmerican/Bus. Credit, Inc. v. Paul Safran Metal Co.*, 566 F. Supp. 254, 256-57 (N.D. Ill. 1983). The Seventh Circuit, in what appears to be a dictum, articulated the same understanding of § 9-318(1). *See In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 953 (7th Cir. 2003) (§ 9-318(1) "makes assignees subject only to the terms of the original contract [on which the assignee sued the account debtor] plus those defenses of the account debtor against the assignor that while they do not arise from the contract do at least

accrue before the account debtor (the assignor's debtor …) learns of the assignment"). The leading UCC treatise, considering the current § 9-404, is in accord:

> [Section 9-404(a)(2)] addresses the other defenses and claims, which the account debtor has against the assignor, and to which the rights of the assignee-secured party are subject. These include affirmative claims not in recoupment, *and include defenses or claims which do not arise from the account debtor-assignor contract, but from transactions between the parties independent of that contract*. For example, the account debtor may have bought other goods from the assignor, those goods may have been defective, and the account debtor may refuse to pay the assignor or the assignor's assignee (the secured creditor) for this reason.

James J. White & Robert S. Summers, *Uniform Commercial Code* § 34-6 (6th ed. 2010) (emphasis added).

To support its contrary view, the Bank cites *Michelin Tires (Canada), Ltd. v. First National Bank of Boston*, 666 F.2d 673 (1st Cir. 1981), which interpreted the former UCC § 9-318(1). *Michelin* held that § 9-318(1) did not permit an account debtor to bring what the First Circuit called "an affirmative suit" by way of counterclaim against the assignee. *Id*. at 678-79. By "affirmative suit," however, the First Circuit did not mean a counterclaim by the account debtor against the assignee based on a contract different from the contract underlying the assignee's suit against the account debtor; rather, it meant a counterclaim that would allow the account debtor to recover more from the assignee than what the account debtor owed the assignee. *See id*. at 677 (explaining that the text of § 9-318(1) "connotes only that the assignee's rights to recover are limited by the obligor's [account debtor's] rights to assert contractual defenses *as a set-off*, implying that affirmative recovery against the assignee is not intended") (emphasis added). The former § 9-318(1) did not explicitly impose that limitation on counterclaims brought by an account debtor against the assignee; the current § 9-404 does, by virtue of the 2001 addition of subsection (b), which codified *Michelin*. *See* 810 ILCS 5/9-404(b)

("the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes."). The official comments to the 2001 revisions reflect precisely this understanding: "**Limitation on Affirmative Claims**. Subsection (b) is new. It limits the claim that the account debtor may assert against an assignee. Borrowing from Section 3-305(a)(3) and cases construing former Section 9-318, subsection (b) generally does not afford the account debtor the right to an affirmative recovery from an assignee." UCC § 9-404, Official Comment 3; *see also* 2 Ill. Prac., UCC Forms Annotated § 9.2.9, Form 20 ("Subsection (b) of § 9-404 squarely resolves that question [presented by *Michelin*]. It provides that the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) thereof only to reduce the amount the account debtor owes. In other words, it does not afford the account debtor the right to an affirmative recovery from an assignee.") (citing UCC § 9-404, Official Comment 3).

*Michelin* thus has no bearing on the question whether an account debtor's counterclaim against the assignee is limited to claims arising from the contract underlying the assignee's suit against the account debtor. The plain text of § 9-404 definitively answers that question in the negative. Consistent with § 9-404(b) and the principle from *Michelin* that the provision codifies, Trinity concedes that it cannot recover by way of its § 9-404(a) counterclaim an amount greater than the amount it owes the Bank on the accounts receivable. That is, Trinity recognizes that its counterclaim is limited to a set-off and cannot provide the basis for affirmative monetary relief against the Bank.

The Bank contends in the alternative that § 9-404 is inapplicable because it is a purchaser in due course of the accounts receivable, not an assignee. Doc. 44 at 7. The Bank does not support this contention with sufficient argument or authority, thus forfeiting the point for

purposes of its motion to dismiss. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010). In any event, because the Bank has not attempted to demonstrate that any attachment to the pleadings affirmatively shows otherwise, the counterclaim's allegation that the Bank is an assignee must be deemed true on a Rule 12(b)(6) motion. The Bank is free to pursue on summary judgment or at trial its contention that it is not an "assignee" under § 9-404.

For these reasons, the Bank's motion to dismiss Trinity's counterclaim is denied.

August 9, 2011

_____
United States District Judge